## CALVIN S. LANE

### *vs.*

## THE INHABITANTS OF THE TOWN OF HARMONY.

## Cumberland.    Opinion May 16, 1914.

*Auditor.   Commissions.   Contract.   False Representations.   Plans.   Report.*
*Warranty.*

1.   Where fraud is set up by the defendants, it must be material, relate distinctly to the contract and affect its very essence and substance.
2.   While there is no standard by which to determine whether the fraud be material or not, the accepted rule is that if the fraud be such that, had it not been practiced, the contract would not have been · made, or the transaction completed, then it is material to it.
3.   If it be shown or made probable that the same thing would have been done by the parties in the same way, if the fraud had not been practiced, it cannot be deemed material.
4.   The fraud must be material and must mislead and work an actual injury; otherwise no action lies and no such defense can be maintained.
5.   It must appear that the defendant not only did in fact rely upon the fraudulent statement, but had a right to rely upon it, in full belief of its truth.
6.   The rule is the same where false representations, though honestly made, are believed to be true and are relied upon by the other party.
7.   Fraud may be committed by the artful and intentioned concealment of facts exclusively within the knowledge of one party and known by him to be material, and where the other party had not equal means of information.

On report.    Judgment for defendants.

This is an action on the case to recover for services as an architect in drafting plans and specifications for a school house building in the defendant town and for supervising the construction of the same and for purchasing supplies used in the construction of said school house, in the summer of 1911, amounting in all to $1742.90.    The defendant pleaded the general issue and filed a brief statement in substance that plaintiff represented and warranted to the defendants that said pro-

posed building, of which he submitted plans, would not exceed in cost the sum of five thousand dollars, and that said plans were accepted and approved upon the strength of and in reliance upon said representations, and that the plaintiff was employed upon such express condition, and that said building cost over fifteen thousand dollars. At the conclusion of the evidence, the case was reported to the Law Court upon the writ, pleadings, auditor's report and so much of the evidence reported as is legally admissible; the Law Court to render such judgment as the rights of the parties require.

The case is stated in the opinion.

*Frank I. Moore, and Enoch O. Greenleaf,* for plaintiff.

*Merrill & Merrill,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, PHILBROOK, JJ.

HANSON, J. This is an action on the case brought by the plaintiff, an architect, to recover for services, commissions and expenses, which he claims to be due under a contract with the defendant, for plans and specifications for a school building, and the purchase of material therefor. The contract reads as follows:

"To whom it may concern:

This is to certify that we the selectmen of the Town of Harmony, Me. Sommerset County, State of Maine, do hereby give Calvin S. Lane of Portland, Maine, Cumberland County, State of Maine, full authority to make and let all contracts for labor and materials, etc. to be used in and for the construction of a school building to be built for the town of Harmony, Me. according to plans and specifications as furnished by said Calvin S. Lane.

It is understood and agreed that he is to receive for his services the following commission, 5% per cent for plans, specifications and details and 5% per cent and all expenses as disbursements for making and letting contracts and such other services as will be necessary to complete the said school building.

| Witness | G. W. CHADBOURNE |
|---|---|
| E. F. STEVENS | E. B. REED |
| | Selectmen of the Town of Harmony, Me." |

The plaintiff sues for $1,742.90, being as he claims 10 per cent of the cost of the building and equipment and expenses, and insists that he has in good faith performed the duties required by the contract, and that the charges are such as the contract provided for. The defendants deny liability, and by brief statement say "that the said plaintiff represented and warranted to the defendant that the proposed building of which he submitted plans would not exceed in cost the sum of five thousand dollars, that said plans were accepted and approved only upon the strength of and in reliance upon said representation and warranty and the plaintiff employed only upon such express condition if employed at all.   And the defendant avers that said building built in said manner cost over fifteen thousand dollars, which excessive expenditure was wholly caused by said false representation and warranty of the plaintiff, and that by reason thereof the plaintiff is not entitled to receive anything for alleged services. Also that the work done by the plaintiff was performed in such a negligent, careless and unskillful manner that the defendant was damaged far in excess of any amount due the plaintiff for his alleged services and that the alleged services of the plaintiff were worthless. Also that the defendant has fully paid the plaintiff and overpaid him."

At the return term the presiding Justice appointed an auditor, whose report at the trial, after being confirmed, was introduced by the plaintiff and relied on by him to make out a prima facie case. After taking out the testimony, the case was reported to the Law Court for determination upon so much of the evidence as is legally admissible.

The auditor's report not only states the account between the parties, but also deals with conclusions of fact in reference to the scope and tendency of the contract in question, as well as with other facts and circumstances relating to the case.   So much of the report as deals with the account stated, we adopt without question as correct. That part of the report devoted to conclusions of fact will be considered in connection with all the other evidence in the case.

The case shows that in June, 1911, the plaintiff, learning that the defendant town had voted to build a school house, called on the town officers and opened negotiations with them with a view to securing employment as an architect.   It appears that he made inquiry as to the financial standing of the town, and secured the

information from the town clerk and other town officers. He was told that the town had on hand $2,000, and it appeared of record that the town had voted $1,000 additional for the purpose, having in all $3,000 which could be lawfully used at the date of the conference.

The plaintiff claims that he was employed to design the building and purchase the materials entering into its construction and equipment. That in the first conference he made a sketch of the building and an estimate of the cost of its construction, and submitted the figures to the selectmen. He says the estimate for the building alone "was figured from six to eight thousand dollars." He was asked in direct examination: "Q. Why did you make so large a margin in your estimate," and answered, "Because I was not familiar with the local conditions." And he says he was not told "how expensive a building the town wanted to build," and that he did not ask the town officers for that information. He also says that in the second conference the details leading up to his final employment were agreed upon, and on that date he entered upon the services for which this action is brought, with no further limitation of authority than that "they wanted to build as economically as they could."

The defendant town, through its officers, five of whom at least were parties to the transaction, denies the plaintiff's claim that there was nothing said about the expense involved, or that the plaintiff submitted estimates in which the building alone would cost from six to eight thousand dollars. Their version is substantially this: "Mr. Lane said he heard we were going to build a school house, and that he was an architect and he had come to see us about furnishing the plans, and we told him we were to build a school house that year and were looking for plans for one. He asked us what kind of a school house we were going to build, and we told him, and he asked us how expensive a school house, and we told him we didn't want to build a school house that would cost much over three thousand dollars, and we thought the town wouldn't stand for it; and he wanted to know how many rooms . . . . we wanted, and we told him, and he asked us all about what kind of a building we wanted and if we had ever had any plans or specifications and we told him we had," and that they had further talk with the architect in which he assured them that a building such as they described could be built by him for between four and five thousand dollars, and equipped with light and

heat and plumbing, and that he would guarantee that such a building ready for occupancy could be built at a cost not to exceed $5,000; that upon this assurance and guaranty, they gave him the contract to so build and equip the building, but they say it was not the contract appearing in this case. They claim they did not agree to pay an additional per five cent. for making contracts and disbursing the money, but that the plaintiff volunteered that service, saying in effect that "as he lived in Portland he could do this without trouble or expense."

While there is conflict as to signing the contract in suit, we find it was signed by two of the selectmen. The plaintiff says: "I asked them first in regard to the building, what it was to be used for, and they told me, and then I asked them what the local conditions were as to getting materials, and they gave it to me as nearly as they could and I computed my figures accordingly. They said they had had a building plan from some architect—I think they said from Dexter. I didn't know the man's name was Dexter; and they said they weren't satisfied with it, with the price that the contractor said the building could be built for and what there was in it, and it was not satisfactory to the state authorities or to themselves." This bid appears to have amounted to $7,877. He states further that after the plans had been adopted,—"One of them asked what was the next step to take. I told them they could advertise for bids; that was when we submitted our plans.

Q. What was said further?

A. And they wanted to know how long it would take, and I told them it would take a matter of three weeks I thought, and they wanted to know if it couldn't be done any quicker, and I said no, it couldn't and that brought about the going ahead with the day work.

Q. And was it agreed upon at that time that it should be done by days work under the direction of the superintendent?

A. Yes, sir.

Q. Was any reason given why they didn't want to advertise for bids?

A. They said if they submitted it back to the town they would probably lose the whole proposition, and that they had a very close shave to get it in that year, that they got the building and they wanted to build it as economically as they could, and they read the vote to me."

Mr. Bailey, one of the selectmen, was asked in cross-examination: Q. Had you expected Mr. Lane to build that building and put in everything that the plans call for and fixtures, including heating and plumbing, for a sum not exceeding $5,000? A. Yes, sir, we took his word for it."

It is apparent from the contract that the defendants, relying upon the plaintiff's ability and integrity, employed him to design the building in question in all its parts, and furnish the same with lighting and heating appliances and all necessary equipment, and since the plaintiff has charged in his account the commission on the entire cost of the completed building and equipment, his understanding of the contract needs no comment. But to what kind of building and equipment did the contract relate, and what was to be the expense attending it? On these questions counsel for defendants contends that the plaintiff made false representations to the defendants, and that the defendants relying upon such representations were induced thereby to undertake the erection and equipment of a school building, which they claim would not have been undertaken if the plaintiff had not misled them as to the expense involved. The plaintiff denies that he misrepresented, or that he made representations at all in respect to the cost of the building or its furnishings, and points to the finding of the auditor as confirming his position.

Upon this branch of the case the auditor finds as follows: "After considering all the testimony on both sides, I find that the plaintiff did not guarantee that the building should not exceed any specified sum, but there is nothing to indicate that the town officers at this time anticipated, from the figures given and conversation had, that the building would cost as much as it did when completed. I find that the building committee was anxious to construct a modern, standard school building, and that they wanted to build as cheaply as possible, but were willing to take some chances as to ultimate cost."

The finding that the building "committee were willing to take some chances as to the ultimate cost" does not warrant the conclusion that the committee understood that the cost would exceed $5,000. The only testimony in which reference to "chances" appears, is that of Mr. Merrill, the superintendent of schools, who stated, "that as long as he (the plaintiff) was guaranteeing that it wouldn't cost over $5,000, that I would submit of (to) the plans and take my chances with the town as finding fault with the price."

The building and fixtures and furniture according to the evidence cost $16,610.62.

The town officers, by their contract or agreement, gave the plaintiff full power to purchase the materials and make all· contracts necessary in the premises, thus surrendering to him all their power and authority, whether lawfully or not, and all means of knowing definitely, or· even approximately, the cost of materials, or the liability of the town as and while the liability was created by the plaintiff.

It appears that during the time in which the larger expenses were incurred, the plaintiff had charge of the pay-roll of the employees on the building, and all the incidental expenses attending the same, and there is nothing in the case to show that, while the cost was exceeding the limit prescribed by the town, that knowledge of the excess cost was brought to the notice of any town officer by the plaintiff, or that they in any manner acquiesced therein.   So far as the case shows, such knowledge came too late for remedy on their part, and it is not urged by the plaintiff that any information was given them by him, or that they had means of ascertaining such fact until he came to them late in the season with his account for expenditures, and that account did not include the charges for which this suit is brought.   It does not appear that the defendants had knowledge of conditions in season to repudiate the contract, or to stop the excess outlay.   From the auditor's  report we find that substantially all the materials were purchased during July and August, 1911, and that the pay-roll of employees during those months was paid by the plaintiff, the actual disbursements by him being $2,187.15.

The plaintiff was bound to bring to the performance of his contract reasonable care, an intelligence befitting his profession and undertaking, and a proper investigation and knowledge of the business in hand, in all its details.   The representations made to the defendants should be true in fact, as to the general requisites of the contract, and substantially accurate in dealing with the amounts, quantities and values involved.   Good faith should characterize his management of the business intrusted to him.   The defendants had the right to believe that the plaintiff possessed all those attributes, that he stood high in his profession, and would use his skill and good judgment in making the plans and specifications, and the contracts for materials, and that the cost of the building would be substan-

tially as agreed upon in the several conferences leading up to the contract. The case discloses that the plaintiff made diligent inquiry as to the financial condition of the town, was well informed as to the money on hand, and the vote providing additional funds for the purpose. He was as well informed as any of the town officers, or building committee. Having such knowledge, he knew, or must be held to have known, that any contract or agreement entered into by him with any or all of the committee or town officers having in view a building and equipment to cost in excess of $5,000, would not be valid, and therefore not binding upon the town.

If fraud is set up by the defendants, it must be material, relate distinctly to the contract, and affect its very essence and substance. And while there is no standard by which to determine whether the fraud be thus material or not, the accepted rule is, that if the fraud be such that, had it not been practiced, the contract would not have been made, or the transaction completed, then it is material to it, but if it be shown or made probable that the same thing would have been done by the parties, in the same way, if the fraud had not been practiced, it cannot be deemed material.

Parsons on Contracts, vol. 2, page 771.

It does not follow that the fraud in all cases necessarily implies moral turpitude. Ibid.

The fraud must be material, and must mislead and work an actual injury, otherwise no action lies, and no such defense can be maintained. *Morgan* v. *Bliss*, 2 Mass., 112; *Fuller* v. *Hodgdon*, 25 Maine, 243; *Barrett* v. *Railway*, 110 Maine, 24.

It must appear that the defendant not only did in fact rely upon the fraudulent statement, but had a right to rely upon it, in the full belief of its truth. The rule is the same where false representations, though honestly made, are believed to be true, and are relied upon by the other party. *Collins* v. *Dennison*, 12 Met., 549. So too of concealment of such facts as the party is bound to communicate. *Prentiss* v. *Russ*, 16 Maine, 30; *Kidney* v. *Stoddard*, 7 Met., 252; *Clark* v. *Ins. Co.*, 8 How., 235; *Fletcher* v. *Com. Ins. Co.*, 18 Pick., 419; *Atwood* v. *Chapman*, 68 Maine, 36.

Here there is no point raised as to the statements being mere matters of opinion. There is direct conflict of testimony as to the issue involved. If the plaintiff intentionally suppressed the truth, or stated as a fact matters or things which were untrue, and which

the defendants had the right to believe were matters within the plaintiff's knowledge, on which defendants relied, he cannot recover, whether moral turpitude, or carelessness, or ignorance, or gross inattention to his duties, is the source of such statement. The result is the same, the defendant is injured by the plaintiff's wrongful act or omission, and the law holds him responsible in either case. *Ayers* v. *Hewitt,* 19 Maine, 281; *Nichols* v. *Patten,* 18 Maine, 231; *Braley* v. *Powers,* 92 Maine, 210.

The rule is otherwise when the parties meet upon equal ground, and where with equal diligence, correct information is equally within the power of both parties, and especially where the party to whom the statement is made is not misled. *McDonald* v. *Christie,* 42 Barb., 36; *Palmer* v. *Bell,* 85 Maine, 355.

The authorities are uniform that material misrepresentations which go to the substance of the contract, avoid that contract, whether they are caused by mistake, and occur wholly without fault, or are designed and fraudulent. *Doggett* v. *Emerson,* 3 Story, 700, and cases cited. *Hewin* v. *Libby,* 36 Maine, 350.

A careful reading of the testimony leads to but one conclusion. The defendants were misled by the representations of the plaintiff and injured thereby. He has already received over five hundred dollars for his services, and with that should be content. It is unnecessary to consider the remaining objections of defendants' counsel.

The entry must be,

*Judgment for defendants.*