**ESTATE OF Lloyd WHITLOCK.**

Supreme Judicial Court of Maine.

Argued Sept. 9, 1992.
Decided Nov. 12, 1992.

---

James E. Mitchell (orally), Jim Mitchell & Jed Davis, P.A., Augusta, for plaintiff.

Nathan Dane, III (orally), Bangor, for Clair Turner.

Amy L. Faircloth (orally), Vafiades, Brountas & Kominsky, Bangor, for Valmore Tracy.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

WATHEN, Chief Justice.

Plaintiffs Roger and Norman Tracy appeal from a judgment of the Penobscot County Probate Court (*Woodcock, J.*) finding that Clair Turner is a half-sister of Lloyd Whitlock and is entitled to receive a one-quarter share of his estate. Plaintiffs also challenge the court's denial of their motion for costs and attorney fees. Plaintiffs argue that the court erred in concluding that they bore the burden of proving that Clair Turner is not a half-sister of Lloyd Whitlock, and that there was an improper exercise of power by the estate's personal representative. We agree and vacate the judgment.

The relevant facts of the case, as previously set forth by this court in *Estate of Lloyd Whitlock*, 576 A.2d 748, 749–50 (Me. 1990), are as follows:

Lloyd J. Whitlock died intestate in Brewer in April 1987. He had no spouse or children and his parents predeceased him. Valmore Tracy, Lloyd's half-brother, was appointed personal representative of the estate. Roger and Norman, Lloyd's other half-brothers, promptly notified Valmore that they were uncertain whether Clair Turner, whom they all had assumed was Lloyd's half-sister, did in fact bear that relationship to him and whether she should be included in the distribution of his estate.[1] Valmore promised to investigate Clair's relationship to Lloyd and further told Roger and Norman that if in fact Clair was not Lloyd's half-sister, he personally would give her a share of the estate from his own distributive share....

In October 1987 Roger, Norman, and Clair received from Valmore ... a proposed Agreement Among Successors ... The Agreement divided the net estate remaining to be distributed, as established by the inventory and accounting, into four equal shares of $24,570 each going to Valmore, Roger, Norman, and Clair. All four of them signed this Agreement. Valmore distributed the estate accordingly, and all of them negotiated their settlement checks.

Roger and Norman, however, continued to contest Valmore's conduct as personal representative. In December 1987 Valmore petitioned the Probate Court for an order of complete settlement.... In their answer to that petition Roger and Norman contended that Valmore had made material misrepresentations ... regarding the number of distributive shares when he listed Clair as a successor in interest. They further contended that those material misrepresentations

induced them to sign the Agreement, that their conduct in signing was therefore not an effective manifestation of assent, and that the Agreement was voidable by them....

On the prior appeal, we vacated the summary judgment in part and remanded the case for trial to determine "whether Valmore impliedly represented that he had made an investigation, whether that representation was false, whether that representation induced the appellants to sign the Agreement, and whether Clair was in fact not a half-sister." *Id.* at 751. On remand the Probate Court ruled that plaintiffs had the burden of proving by a preponderance of the evidence that Clair was not in fact the half-sister of Lloyd and made the following findings of fact:

1. By presenting the Agreement, Valmore Tracy impliedly represented that he had made an investigation as to whether or not Clair Turner was a half-sister of the decedent.

2. Valmore Tracy did not investigate such heirship status.

3. Valmore Tracy's implied representation that he had made an investigation was false.

4. Said representation induced Roger Tracy and Norman Tracy to sign the Agreement.

The court then determined that Clair Turner was the half-sister of Lloyd Whitlock and upheld the Agreement. Plaintiffs' motion to recover their costs and attorney fees was also denied. This appeal followed.

Plaintiffs sought to void the Agreement on grounds of misrepresentation in the inducement. The burden of proving their claim of misrepresentation by a preponderance of the evidence properly rested on them. *See Estate of Lloyd Whitlock*, 576 A.2d at 751; *Luce v. Hoefler*, 464 A.2d 213,

---

1. Lloyd, Norman, Roger, and Valmore were related through their mother, Elizabeth Manship Tracy Whitlock. Apparently Clair was brought into the household and brought up with the others as their half-sister. As listed on her birth certificate, however, Clair's mother was Irene Edwards. Roger stated in his deposition that

prior to her death, his mother had told him that she used Irene Edwards as a stage name. In the absence of confirmation that Elizabeth M.T. Whitlock and Irene Edwards were one and the same person, however, Clair's relation as Lloyd's half-sister is uncertain.

215 (Me.1983). Proof that Clair was not a half-sister, however, is not a necessary element of plaintiffs' claim of misrepresentation.

■ To successfully assert misrepresentation in the inducement, the plaintiffs must prove by clear and convincing evidence (1) that the personal representative made a fraudulent or material misrepresentation, (2) that the misrepresentation induced them to sign the Agreement, and (3) that they were justified in relying on the misrepresentation. *See Kuperman v. Eiras,* 586 A.2d 1260, 1261, 1263 (Me.1991); Restatement of Contracts (Second) § 164(1) (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient"). Proof of damage from fraud is not necessary to justify rescission. *Kuperman v. Eiras,* 586 A.2d at 1262. The Probate Court's findings of fact conclusively establish that plaintiffs proved the elements of (1) a misrepresentation ("Valmore Tracy's implied representation that he had made an investigation was false") and (2) inducement ("Said representation induced Roger and Norman Tracy to sign the Agreement"). The plaintiffs have also sustained their burden on the element of justifiable reliance. This court has held that a party "may justifiably rely on the fraudulent misrepresentation of [another] ... without investigating the truth or falsity of the representation. Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to him." *Letellier v. Small,* 400 A.2d 371, 376 (Me. 1979). Here, the Probate Court's finding that the misrepresentation induced the plaintiffs to sign the Agreement establishes reliance. The reliance was justified because plaintiffs did not know of its falsity, and its falsity was not obvious.

■ The final element of the plaintiffs' claim of misrepresentation is that the mis-

representation must have been either fraudulent[2] or material. The Probate Court assumed that the misrepresentation was not material because Clair was in fact a half-sister of Lloyd. Plaintiffs argue that the misrepresentation was material because it induced them to sign the Agreement and, if they had not signed the Agreement, the burden of proving Clair's heirship would have been on Clair. Under such circumstances, they contend that the Probate Court might not have found that Clair was the half-sister of Lloyd.

While there is no firm standard to determine when false representations are material, "the accepted rule is that if the [false representations] be such that, had it not been practiced, the contract would not have been made, or the transaction completed, then it is material to it." *Lane v. Inhabitants of the Town of Harmony,* 112 Me. 25, 32, 90 A. 546 (1914). Here, the Probate Court found that the implied representation in fact induced execution of the Agreement, so the contract would not have been made if not for the misrepresentation.

The Restatement (Second) of Contracts § 162(2) & comment c (1981) also provides guidance to determine when a misrepresentation is "material." Section 162(2) provides that "[a] misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." Plaintiffs, who were heirs, questioned Valmore, the personal representative of the estate, as to whether Clair should be included in distribution of the estate. Valmore promised to investigate whether Clair was a half-sister of Lloyd. The Probate Court found that Valmore's implied representation that he had made an investigation was false, and that it induced the plaintiffs to sign the Agreement giving Clair an equal share of the estate. The assertion by a personal representative that he had investigated a person's status as an heir is one to which a reasonable person would be expected to

---

**2.** The misrepresentation may have been fraudulent. *See Bixler v. Wright,* 116 Me. 133, 136–37, 100 A. 467 (1917) (quoting *Eastern Trust & Banking Co. v. Cunningham,* 103 Me. 455, 70 A.

17 (1908); Restatement of Contracts (Second) § 162(1)(a) (1981). However, the parties have argued material misrepresentation, and we limit our review to that claim.

attach importance, or which would influence his judgment, in choosing to sign an agreement giving that person a share of the estate. Valmore was aware that such an assertion was one which would be of importance to the plaintiffs. *See Barrer v. Women's Nat'l Bank,* 761 F.2d 752, 759 (D.C.Cir.1985). Under any of these standards, Valmore's misrepresentation is material.

After applying the Probate Court's findings of fact, the record compels the conclusion that plaintiffs proved all elements of their claim of material misrepresentation and established that the Agreement is voidable.

We next consider where the burden of proof as to Clair's heirship should be placed in the absence of the Agreement. The general rule is that "[i]n actions by heirs or distributees ... the heirs or distributees ordinarily have the burden of affirmatively proving the facts necessary to entitle them to recover, including their relationship as heirs at law." 26A C.J.S. *Descent and Distribution,* § 88b.(1) (1956). *See also In re DeSautels,* 1 Mass.App. 787, 307 N.E.2d 576, 581 (1974) ("The burden rests upon those asserting that they are entitled to share in an estate to prove their contentions"); *Hopkins v. Hopkins,* 287 Mass. 542, 192 N.E. 145, 146 (1934) ("the burden rested upon those asserting that they were entitled to share in the estate of the intestate to prove their contention"). Under this rule, Clair would have the burden of proving her heirship by a preponderance of the evidence. We reject plaintiffs' suggestion that we apply 18–A M.R.S.A. § 2–109(2) (Supp.1991) by analogy and hold that "when an illegitimate child seeks to prove its paternity or maternity after the death of the claimed parent and contrary to the duly filed birth certificate, that child must

do so by clear and convincing evidence." Clair's legitimacy is not the issue in the present case. If the court has found by a preponderance of the evidence that Clair is in fact the half-sister of Lloyd, then the incorrect allocation of the burden of proof would be harmless. Because the record is unclear, we remand for the court to determine whether Clair has established by a preponderance of the evidence that she is the half-sister of Lloyd.

Plaintiffs also argue on appeal that the personal representative misused his power with the result that they are entitled to recover attorney fees and costs. The Probate Court denied the plaintiffs' request that attorney fees be assessed against the estate of Lloyd Whitlock with the fees to be surcharged against Valmore Tracy individually. The court held that there was no improper exercise of power by the personal representative, and that justice did not require such an award.

We disagree. The plaintiffs sought to recover their fees under the provisions of 18–A M.R.S.A. §§ 3–712[3] and 1–601.[4] They allege that Valmore misused his power as personal representative by: (1) falsely misrepresenting that he had investigated Clair's status which induced the plaintiffs to sign the Agreement, and (2) lying to the court by signing an affidavit containing information that he believed was false. The plaintiffs allege that these "lies" constitute a misuse of power by the personal representative as a matter of law, and that since this litigation would not have ensued but for the lies, their costs constitute a damage or loss resulting from a breach of fiduciary duty reimbursable under 18–A M.R.S.A. § 3–712 (1981).

■ A personal representative is held to the standards of a trustee. *Estate of Stowell,* 595 A.2d 1022, 1025 (Me.1991); 18–A

---

**3.** 18–A M.R.S.A. 3–712 (1981) reads in pertinent part as follows:

If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of his fiduciary duty to the same extent as a trustee of an express trust.

**4.** 18–A M.R.S.A. 1–601 (1981) reads in pertinent part as follows:

In contested cases in the original or appellate court of probate, costs may be allowed to either party, including reasonable witness fees, cost of depositions, hospital records or medical reports and attorney's fees, to be paid to either or both parties, out of the estate in controversy, as justice requires.

M.R.S.A. 3–712 (1981) ("the personal representative [is] liable to interested persons for damage or loss resulting from the breach of his fiduciary duty to the same extent as a trustee of an express trust"). The duty of good faith and loyalty owed by a trustee is a high one. Justice Cardozo expressed this concept as follows:

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate.

*Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928). "Th[e] duty to make full disclosure and otherwise to exhibit extreme good faith runs through the whole law of fiduciary and confidential relations [and] applies to ... administrator and next of kin." George G. Bogert, Trusts and Trustees § 544, at 407–08 (2d ed. 1978). Title 18–A M.R.S.A. § 3–703(a) (1981) provides that a personal representative shall observe the standard of care applicable to a trustee under § 7–302. That standard of care is that which "would be observed by a prudent person dealing with the property of another." 18–A M.R.S.A. 7–302(a) (1981).

■ The Probate Court erred in finding that the plaintiffs failed to meet their burden of proof on their misrepresentation claim. It follows that Valmore, the personal representative, made a material misrepresentation to heirs of the estate regarding estate matters. Under the standards set forth, Valmore breached his fiduciary duty to plaintiffs. He failed to make full disclosure, and fell far short of "the punctilio of an honor the most sensitive."

Under the Probate Code, a personal representative is liable for damage or loss resulting from a breach of fiduciary duty. *See* 18–A M.R.S.A. §§ 3–712, 7–306(d)[5].

Plaintiffs argue that whether Clair is Lloyd's half-sister or is not, the attorney fees incurred in seeking to void the Agreement would not have been incurred but for the breach of fiduciary duty.

■ Generally, the allowance of attorney fees and costs rests within the sole discretion of the Probate Court. *Estate of Stowell*, 595 A.2d at 1026 (citing *Estate of Blouin*, 490 A.2d 1212, 1217 (Me.1985). Costs, however, may be allowed to either party out of an estate in controversy as justice requires. 18–A M.R.S.A. § 1–601. We recently held that when a court denied beneficiaries' attorney fees based on an error of law that resulted in a finding of no breach of fiduciary duty, justice required that reasonable attorney fees be reimbursed by the estate because the fees were incurred by beneficiaries seeking redress for the breach of duty. *Estate of Stowell*, 595 A.2d at 1025–26. In this case, Valmore breached his duty by a false representation that induced plaintiffs to sign the Agreement. If not for the misrepresentation, plaintiffs would not have brought suit to void the contract. The lawsuit was an appropriate action to redress the breach. In *Stowell* we found that reasonable fees incurred in seeking redress did constitute "damage or loss to the estate directly resulting from [the personal representative's] breach of fiduciary duties within the meaning of section 3–712." *Id.* at 1026.

Valmore relies on *Estate of Tessier*, 468 A.2d 590, 596 (Me.1983), in which we upheld denial of surcharge against an executor because his breach of duty (failure to inventory furnishings in the decedent's Florida trailer in violation of the Probate Code) was formalistic only, the executor acted in good faith, and there was no loss to the estate. In this case, no loss to the estate other than attorney fees has been shown. A material misrepresentation to beneficiaries that induces them to sign an agreement giving a one-quarter share of the estate to someone who may not be an heir is not "formalistic;" it is a substantive

---

5. 18–A M.R.S.A. 7–306(d) (1981) provides:
   The question of liability as between the trust estate and the trustee individually may be determined in a proceeding for accounting, surcharge or indemnification or other appropriate proceeding.

breach. The personal representative cannot be said to have acted in good faith. *Good faith requires full disclosure.* Bogert, *supra,* § 544, at 400. Valmore promised to investigate Clair's status, did not do it, and then implied falsely that he had. We conclude that Valmore Tracy breached his duty to plaintiffs and that justice requires that their reasonable attorney fees and costs be surcharged against him individually.

The entry is:

Judgment vacated. Remanded to the Penobscot County Probate Court for further proceedings consistent with the opinion herein.

All concurring.