**Roger Diemmer WHITE, Plaintiff,**

v.

**Robert D. MEADOR, et al., Defendants.**

**No.  CIV. 01–153–B–H.**

United States District Court,
D. Maine.

May 31, 2002.

Daniel Lee Rosenthal, Verrill & Dana, Portland, ME, for Plaintiff.

Barry K. Mills, Hale & Hamlin, Ellsworth, ME, Jeffrey A. Thaler, Joseph J. Hahn, Kate DeBevoise, Bernstein, Shur, Sawyer & Nelson, Portland, ME, for Defendants.

### ORDER AFFIRMING RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, Chief Judge.

The United States Magistrate Judge filed with the court on April 16, 2002, with copies to counsel, his Memorandum Decision on Defendants' Motion to Strike the Plaintiff's Designation of Expert Witnesses and Motion of Defendants Joyce and Mt. Desert Properties to Strike Plaintiff's Statement of Material Facts and Recommended Decision on Plaintiff's Motion for Partial Judgment on the Pleadings, Motion of Defendants Joyce and Mt. Desert Properties for Summary Judgment and Meador Defendants' Motion to Dismiss and for Summary Judgment. On April 24, 2002, defendants Joyce and Mt. Desert Properties filed an objection to the Recommended

Decision and a request for reconsideration of ruling on their motion to strike designation of expert witnesses. The Meador defendants filed their objection to the Recommended Decision on May 1, 2002. The plaintiff filed his objection to the Recommended Decision on May 3, 2002. The parties have notified the Court that the plaintiff and the Meador defendants have subsequently settled their disputes.

I have reviewed and considered the Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and determine that no further proceeding is necessary.

The motion of defendants Joyce and Mt. Desert Properties for reconsideration of the ruling on their motion to strike designation of plaintiff's experts is DENIED. The Magistrate Judge's ruling is AFFIRMED as it is not clearly erroneous nor contrary to law.

It is therefore ORDERED that the Recommended Decision of the Magistrate Judge is hereby ADOPTED with respect to the dispute between the plaintiff and the defendants Joyce and Mt. Desert Properties. The motion of defendants Joyce and Mt. Desert Properties for summary judgment is GRANTED as to Counts I, II, IV and VII of the First Amended Complaint and any claim for punitive damages, and is otherwise DENIED.

So ORDERED.

*MEMORANDUM DECISION ON DEFENDANTS' MOTIONS TO STRIKE THE PLAINTIFF'S DESIGNATION OF EXPERT WITNESSES AND MOTION OF DEFENDANTS JOYCE AND MT. DESERT PROPERTIES TO STRIKE PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND RECOMMENDED DECISION ON PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, MOTION OF DEFENDANTS JOYCE AND MT. DESERT PROPERTIES FOR SUMMARY JUDGMENT AND MEADOR DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT*[1]

COHEN, United States Magistrate Judge.

The plaintiff in this action arising out of the sale of real estate in Bar Harbor, Maine, seeks judgment on the pleadings on Count II of the counterclaim filed by defendants Robert D. Meador and Mary Kathleen Meador ("the Meador defendants"). Defendants Joyce and Mt. Desert Properties ("the Joyce defendants") move to strike the plaintiff's designation of Jerome Suminsby and Ernest Whitehouse as expert witnesses, for summary judgment on all claims asserted against them and to strike the statement of material facts submitted by the plaintiff in opposition to their motion for summary judgment. The Meador defendants move to dismiss Count II of the amended complaint and for summary judgment on all claims asserted against them and to strike the plaintiff's designation of Suminsby.[2] I

---

1. Defendants Sharon L. Joyce and Mt. Desert Properties, Inc. have also moved for sanctions against the plaintiff and his attorneys. Defendants Sharon L. Joyce and Mt. Desert Properties, Inc.'s Motion for Sanctions, etc. (Docket No. 58). Disposition of that motion will be deferred until this action has otherwise been fully resolved.

2. The court has granted the motion of the two remaining defendants named in the amended complaint (Docket No. 22), Janet S. Moore and Janet S. Moore Real Estate, LLC, to dismiss the claims asserted against them, Order Affirming Recommended Decision of the Magistrate Judge (Docket No. 45).

deny the motions to strike and I recommend that the court grant the plaintiff's motion, grant the Joyce defendants' motion for summary judgment in part and grant the Meador defendants' motion for summary judgment.

## I. The Plaintiff's Motion

### A. Applicable Legal Standard

The plaintiff seeks judgment on the pleadings on Count II of the Meador defendants' counterclaim. Plaintiff's Motion for Judgment on the Pleadings on Count II of the Counterclaim of Defendants Robert D. and Mary Kathleen Meador ("Plaintiff's Motion") (Docket No. 46). That count alleges tortious interference with prospective contractual relations. Answer to First Amended Complaint, Affirmative Defenses and Counterclaim of Defendants Robert D. Meador and Mary Kathleen Meador ("Counterclaim") (Docket No. 34) at 14–16. A motion for judgment on the pleadings is governed by Fed.R.Civ.P. 12(c). The First Circuit has articulated the applicable standard for evaluating such a motion as follows:

> [B]ecause rendition of judgment in such an abrupt fashion represents an extremely early assessment of the merits of the case, the trial court must accept all of the nonmovant's well-pleaded factual averments as true and draw all reasonable inferences in [its] favor.... [T]he court may not grant a defendant's Rule 12(c) motion unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.

*Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988) (internal quotation marks and citations omitted). *See also GMAC Commercial Mortgage Corp. v. Gleichman,* 84 F.Supp.2d 127, 139 (D.Me. 1999); *Lovell v. One Bancorp,* 690 F.Supp. 1090, 1096 (D.Me.1988) (on motion for judgment on pleadings, factual allegations in complaint must be taken as true and

legal claims assessed in light most favorable to plaintiff; judgment warranted only if there are no genuine issues of material fact and moving party establishes that it is entitled to judgment as matter of law).

### B. Discussion

The plaintiff contends that Count II of the Meador defendants' counterclaim fails to allege several necessary elements of the tort of interference with a prospective economic advantage under Maine law. Plaintiff's Motion at 3–8. The counterclaim alleges, in relevant part, that the Meador defendants purchased the property at issue in this proceeding from the plaintiff as an investment which they intended to use as rental property. Counterclaim ¶ 6. They placed the property with brokers for this purpose "but upon learning of this lawsuit and the pending motion for a temporary restraining order and preliminary injunction, ceased advertising and instructed their brokers not to show the property." *Id.* The TRO/preliminary injunction motion sought an order restraining the Meador defendants from "altering, destroying, selling, or otherwise disposing of" the property, and the Meador defendants "determined that it would be imprudent to rent the property and risk damage or loss in violation of a court order." *Id.* The property could have been rented for four weeks in August 2001 for $3,000 per week and eight weeks in September and October 2001 for $2,500 per week. *Id.* ¶ 7. This court's order denying the motion for preliminary injunction was issued on October 29, 2001. Docket No. 17. The Meador defendants lost rentals in the amount of $32,000 due to the wrongful initiation of this litigation. Counterclaim ¶ 8.

Under Maine law, "[i]nterference with an advantageous relationship requires the existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or

intimidation, and damages proximately caused by the interference." *James v. MacDonald,* 712 A.2d 1054, 1057 (Me. 1998). Count II of the Meador defendants' counterclaim does not allege the existence of a contract, and that alternative accordingly will not be discussed further here.[3] The plaintiff contends that the counterclaim fails to allege either the existence of an expectancy of contractual relations or a reasonable certainty that such an expectancy would have been realized but for the plaintiff's interference, both of which he asserts are elements of the claim that must be pleaded. Plaintiff's Motion at 4–5. He also argues that the counterclaim fails to allege the necessary elements of his knowledge of the prospective business advantage and his intent to interfere with it. *Id.* at 5–6. Finally, he asserts that the counterclaim is fatally deficient in that it fails to allege the necessary element of interference through fraud or intimidation directed toward third parties. *Id.* at 6–8. The Meador defendants respond that their allegation that the property "could have been rented" during August, September and October is sufficient to allege the existence of an expectancy and a reasonable certainty that it would have been realized, that they need not allege knowledge or intent in their pleading, that the fraud or intimidation required need not be directed toward a third party, and that their allegation that the tortious conduct involved was "wrongfully initiating this litigation" is sufficient to allege intimidation. Defendants Robert D. Meador and Mary Kathleen Meador's Objection to Plaintiff's Motion for Judgment on the Pleadings, etc. ("Meador Opposition") (Docket No. 53) at 3–6.

Given the generous standard applicable to inferences to be drawn from pleadings in connection with motions under Rule 12(c), it might be reasonable to infer from the counterclaim's minimal allegations that the fact that the property "could have been rented" means that there was a reasonable certainty that the Meador defendants would have entered into rental contracts for the property for the relevant period. The plaintiff cannot succeed on his first argument.

While the Maine Law Court has not spoken directly to the question, it has discussed intimidation for purposes of a tortious interference claim in terms of conduct directed at third parties rather than at the plaintiff. *E.g., Pombriant v. Blue Cross/Blue Shield of Maine,* 562 A.2d 656, 659 (Me.1989) (citing cases). *See also Davric Maine Corp. v. Rancourt,* 216 F.3d 143, 150 (1st Cir.2000) (interpreting Maine law, upholding summary judgment on tortious interference claim where plaintiff produced no evidence of fraud or intimidation directed at third parties). The law of other states that have adopted similar definitions of this tort requires that the conduct be directed toward third parties. *E.g., Zakutansky v. Bionetics Corp.,* 806 F.Supp. 1362, 1366 (N.D.Ill.1992) (Illinois law). The counterclaim here does not mention any activity directed toward parties other than the Meador defendants. Similarly, the Maine Law Court has not addressed the question whether a defendant's knowledge and intent must be pleaded, but courts in other jurisdictions do impose such a pleading requirement in connection with this tort. *E.g., Marc Dev., Inc. v. Wolin,* 845 F.Supp. 547, 555 (N.D.Ill.1993). *See generally Cooperman*

---

**3.** Contrary to the plaintiff's assertion, the Maine Law Court's opinion in *C.N. Brown Co. v. Gillen,* 569 A.2d 1206, 1210 (Me.1990), cannot reasonably be read to require that only

an existing contract may provide the basis for an intentional interference claim in a business context. *See, e.g., Barnes v. Zappia,* 658 A.2d 1086, 1090 (Me.1995).

*v. Individual, Inc.,* 171 F.3d 43, 47 (1st Cir.1999) (to survive motion to dismiss, "plaintiffs must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory,'" quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)).

▮ It is not necessary to predict how the Law Court would decide these questions, however, because the pleading in Count II of the counterclaim is fatally deficient in another way. The plaintiff contends that the counterclaim fails to allege fraud or intimidation because "abuse of process"—the term used in the counterclaim—cannot be based solely on the filing of an action, Plaintiff's Motion at 8, and "wrongful initiation of litigation"—the term used in the Meador defendants' opposition to the motion, Meador Opposition at 6, does not ripen into a tort until a prior proceeding has been terminated in the complaining party's favor, Plaintiff's Reply to Objection of Defendants, etc. (Docket No. 63) at 5. Under Maine law, an action for abuse of process may not be based solely on the filing of a complaint, *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell,* 708 A.2d 283, 286 (Me.1998), and that is the only tortious conduct alleged in the counterclaim. If the counterclaim may reasonably be interpreted to allege instead the tort of wrongful use of civil proceedings, in order to state such a claim "a plaintiff must allege that an action was instituted against him without probable cause and with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings were based and that he received a favorable termination of the proceedings." *Id.* Since the only action mentioned in the counterclaim is the instant action, which obviously has not yet terminated, the Meador defendants cannot at this time allege the wrongful use of civil proceedings. Accordingly, the Meador de-

fendants can prove no set of facts in support of their interference claim that would entitle them to relief in this action, and the plaintiff is entitled to judgment on Count II of the Meador counterclaim.

## II. The Motions to Strike Expert Designations

All defendants move to strike the plaintiff's designation of Jerome Suminsby as an expert witness. Defendants Sharon L. Joyce and Mt. Desert Properties, Inc.'s Motion to Strike Plaintiff's Expert Witness Designations ("Joyce Motion to Strike") (Docket No. 47) & Defendants' [sic] Robert D. Meador and Mary Kathleen Meador's Motion ... to Strike Plaintiff's Expert Witness Designation of Jerome Suminsby ("Meador Motion to Strike") (Docket No. 52). Joyce and Mt. Desert Properties also move to strike the plaintiff's designation of Ernest Whitehouse as an expert witness. Joyce Motion to Strike.

The scheduling order issued in this case states that the plaintiff was to designate expert witnesses and provide "a Complete Statement of All Opinions to Be Expressed and the Basis and Reasons Therefor" by November 6, 2001. Scheduling Order (Docket No. 10) at [2]. On that date, counsel for the plaintiff served designations of Jerome Suminsby and Ernest A. Whitehouse as expert witnesses. Exhs. A & B to Joyce Motion to Strike. With respect to Suminsby the designation states:

> Mr. Suminsby is expected to testify regarding the nature and dynamics of the market for coastal real estate on Mt. Desert Island and elsewhere in Maine, including but not limited to the manner in which such real estate is generally marketed and sold. Specifically, Mr. Suminsby is expected to testify regarding sales activity in coastal real estate; the exposure and marketing time generally required to sell such real estate;

and the impact of the sale for $7,850,000 of a property near the property that is the subject of this action on the foregoing matters.

Mr. Suminsby's testimony will be based upon his professional experience as a real estate appraiser and consultant.

Plaintiff's Expert Witness Designation [of Jerome Suminsby], Exh. A to Joyce Motion to Strike, at 1. Attached to the designation is a one-page curriculum vitae for Suminsby and a general list of court cases in which he had provided testimony.

With respect to Whitehouse, the designation states:

Mr. Whitehouse will testify regarding the obligations of both buyer's and seller's real estate agents to a seller of real estate, including but not limited to their obligations to provide a careful and thorough analysis of the market, to disclose relevant facts, including sales of properties in the area, to be truthful in their representations about the consequences of issues and factors that might affect the value of real estate, and the legal provisions governing their activities. Mr. Whitehouse's testimony will be based upon his professional experience in the real estate business.

Plaintiff's Expert Witness Designation [of Ernest A. Whitehouse], Exh. B to Joyce Motion to Strike, at 1. A four-page curriculum vitae for Whitehouse is attached to the designation.

Counsel for the defendants who have since been dismissed from this case wrote to counsel for the plaintiff on November 8, 2001, asserting that the plaintiff's expert witness designations did not comply with Rule 26(a)(2)(B) and requesting that counsel for the plaintiff "bring the designation into compliance within the next five days." Letter dated November 8, 2001 from Daniel A. Pileggi, Esq. to James T. Kilbreth, Esq., Exh. 3 to Meador Motion to Strike.

On January 28, 2002, six days after the deadline to complete discovery set by the scheduling order (Docket No. 10 at [2]), counsel for the plaintiff provided counsel for the defendants with a four-page report written by Suminsby, characterizing the report as "a supplementation of Plaintiff's designation of Jerome H. Suminsby as an expert witness." Letter dated January 28, 2002 from Daniel L. Rosenthal to Joseph J. Hahn, Esq., et al., Exh. 2 to Meador Motion to Strike. None of the defendants took the deposition of Suminsby or Whitehouse.

■ The plaintiff's initial designations of Suminsby and Whitehouse are insufficient. However, from all that appears in the record, none of the moving defendants took any action to seek further information or to notify plaintiff's counsel that they considered the designations to be incomplete in any way. Counsel must at least give opposing counsel a timely opportunity to remedy omissions in the required designations before seeking assistance from the court in obtaining the necessary information, which should also be done well before the close of discovery. Counsel may not simply sit by until the case has been scheduled for trial and then seek to have an opponent's experts excluded when the basis for that exclusion could have been addressed and remedied months earlier. Neither motion identifies any prejudice to the defendants from the insufficient designations other than the assertion by the Meador defendants that they were harmed "because the initial designation did not alert the Defendants to the need to make further investigation." Meador Motion to Strike at 2. The Meador defendants do not support this assertion with the identification of any statement in Suminsby's report that they contend has the potential to harm them at trial and to which they will be unable to respond adequately in the

time available. Even if their initial failure to seek compliance with the scheduling order were not a bar to their request, they have failed to demonstrate any concrete harm from the insufficient designation and tardy provision of Suminsby's report.

The motions to strike the plaintiff's expert designations is denied.

### III. The Motion to Strike the Plaintiff's Statement of Material Facts

The Joyce defendants move to strike the statement of material facts filed by the plaintiff in opposition to their motion for summary judgment. Defendants Sharon L. Joyce and Mt. Desert Properties, Inc.'s Motion to Strike Plaintiff's Statement of Material Facts, etc. (Docket No. 59). As the basis for the motion, they state that "[m]any of the statements contained in Plaintiff's opposition are not supported by record references, are supported by record references which are not admissible, or are completely irrelevant to any issue raised in Defendants' motion." *Id.* at 1. They contend that the plaintiff's opposing statement of material facts is neither short nor concise, in violation of this court's Local Rule 56(c) and should therefore be disregarded by the court, citing the opinions of Maine state courts. *Id.* at 2. They also argue that "[i]t is fundamentally unfair to require defense counsel to sift through each and every sentence in Plaintiff's opposing statement of material facts" where the opposing statement is not short and concise. Defendants Sharon L. Joyce and Mt. Desert Properties, Inc.'s Reply Brief to Plaintiff's Opposition to Motion … to Strike Plaintiff's Consolidated Opposing Statement of Material Facts (Docket No. 70) at 1.

It is not and cannot be "fundamentally unfair" to require counsel to do what every lawyer is required to do under this court's local rules. Counsel may not obtain relief based on conclusory statements alone. If a party wishes the court to disregard an opposing party's statements of material facts because they are unsupported by citations to the record, because the citations to the record given do not in fact support a given statement or because the statements themselves are irrelevant, that party must identify each such statement in order to allow the court to evaluate that party's assertions. The plaintiff's opposing statement of material facts in this case does fail to comply with Local Rule 56, most obviously in that much additional information is included in the responses to specific statements in the defendants' statements of material facts rather than in a separate section as required by Local Rule 56(c). However, if the additional material had been submitted in the appropriate form, the defendants would still have had to reply to that material, unless they were willing to have that material deemed admitted under Local Rule 56(d).

■ The plaintiff's opposing statement of material facts is not so deficient under Local Rule 56 that it should be stricken. It is the burden of defense counsel, however unwelcome and however magnified by unfortunate verbosity on the part of an opponent, to point out to the court the manner in which each factual statement is irrelevant or should be disregarded or discounted for some particular reason. What would be fundamentally unfair would be for the court to accept a litigant's conclusory assertion that its opponent's entire statement of material facts should be stricken in the absence of any identification of specific instances of failure to comply with applicable procedural rules.

The motion to strike the plaintiff's opposing statement of material facts is denied.

## IV. The Motions for Summary Judgment[4]

### A. Applicable Legal Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.... By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party....'" *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir.1997).

Once the moving party has made a preliminary showing that no genuine issue of material fact exists, "the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995) (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548); Fed. R.Civ.P. 56(e). "This is especially true in respect to claims or issues on which the nonmovant bears the burden of proof." *International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir.1996) (citations omitted).

### B. Factual Background

The following material facts are appropriately supported in the parties' statements of material facts submitted pursuant to this court's Local Rule 56.

The plaintiff is trustee of the Roger Diemmer White Inter Vivos Trust. Defendants Robert D. Meador and Mary Kathleen Meador's Statement of Material Facts in Support of Motion for Summary Judgment ("Meador SMF") (Docket No. 51) ¶ 1; Plaintiff's Consolidated Opposing Statement of Material Facts in Support of Opposition to Defendants' Motion [sic] for Summary Judgment ("Plaintiff's SMF") (Docket No. 55) Meador[5] ¶ 1. Defendant

---

4. The Meador defendants also moved to dismiss Count II of the amended complaint. Defendants Robert D. Meador and Mary Kathleen Meador's Motion for Summary Judgment, etc. ("Meador Motion for Summary Judgment") (Docket No. 50) at 1, 3, 11–12. The plaintiff "no longer presses his claims of fraud, conspiracy, or punitive damages" against these defendants. Plaintiff's Consolidated Opposition to Motions for Summary Judgment of Defendants Robert D. Meador, Mary Kathleen Meador, Sharon L. Joyce, and Mt. Desert Properties, Inc. ("Plaintiff's Summary Judgment Opposition") (Docket No. 54) at 2 n. 1. Accordingly, the Meador defendants are entitled to dismissal of Count II as well as Count I (alleging fraud) and any claim for punitive damages.

5. The plaintiff's "consolidated" response to the two statements of material facts filed in support of the two motions for summary judgment responds first to the statement of material facts filed by the Joyce defendants, beginning with his response to paragraph 1 of that document on page 1, and then provides responses to the Meador statement of material facts, again beginning with paragraph 1 of that document, this time on page 30. In order to avoid confusion, my citations to the plaintiff's statement of material facts will identify the moving parties who filed the particular statement to which the plaintiff is responding; i.e., "Plaintiff's SMF Joyce ¶ 1" refers to the plaintiff's response to paragraph 1 of the Joyce statement of material facts and "Plaintiff's SMF Meador ¶ 1" refers to the

Joyce is president of defendant Mt. Desert Properties, Inc., a Maine corporation that specializes in vacation home rentals and real estate sales. *Id.* ¶ 3; Defendants Sharon L. Joyce and Mt. Desert Properties, Inc.'s Statement of Undisputed Material Facts ("Joyce SMF") (Docket No. 49) ¶¶ 1–2; Plaintiff's SMF Joyce ¶¶ 1–2.

In August 1989 a testamentary trust, of which the plaintiff was the sole beneficiary, purchased two acres of undeveloped wooded oceanfront property in the town of Bar Harbor, Maine. Meador SMF ¶ 5; Plaintiff's SMF Meador ¶ 5. This property is identified as 12 Old Farm Road. *Id.* ¶ 6. Defendant Joyce represented the sellers in the sale of this property to the testamentary trust. *Id.;* Joyce SMF ¶ 7; Plaintiff's SMF Joyce ¶ 7. On January 5, 1998 the testamentary trust terminated and all of its assets, including the property at 12 Old Farm Road, were transferred to the Roger Diemmer White Inter Vivos Trust. Meador SMF ¶ 5; Plaintiff's SMF Meador ¶ 5. Joyce next had contact with the plaintiff when he made an offer on the land next to this property, which offer was not accepted. Joyce SMF ¶ 8; Plaintiff's SMF Joyce ¶ 8. In August 1990 the plaintiff constructed a house on the property, which he and his family used for limited periods for vacation purposes. Meador SMF ¶ 7; Plaintiff's SMF Meador ¶ 7.

According to the plaintiff, in or about June 2000 the owners of the land abutting the property built a house which adversely affected the driveway the plaintiff had built on the property. *Id.* ¶ 8. He contacted Joyce about this issue because of her familiarity with the property and the surrounding area, and she went to the property to meet with the plaintiff. *Id.* After this meeting, the plaintiff executed an "exclusive right to sell listing agreement" pursuant to which Joyce had an exclusive right to offer the property for sale during the period from July 1, 2000 to January 1, 2001. *Id.* ¶ 11. The listing price was $1.75 million. *Id.* ¶ 12; Joyce SMF ¶ 15, Plaintiff's SMF Joyce ¶ 15.[6] The Meador defendants visited the property once during this listing period with their real estate broker, Janet Moore; Joyce was present at the showing. Meador SMF ¶ 18; Plaintiff's SMF ¶ 18. Neither of the Meadors spoke to Joyce again until May 2001. *Id.* On or about September 28, 2000 the plaintiff reduced the sales price of the property to $1,495,000. *Id.* ¶ 19; Joyce SMF ¶ 26, Plaintiff's SMF Joyce ¶ 26. No offers to purchase the property were received during this listing period. Meador SMF ¶ 20; Plaintiff's SMF Meador ¶ 20.

The property was taken off the market between January 1, 2001 and March 1, 2001. *Id.* ¶ 22; Joyce SMF ¶ 27, Plaintiff's SMF Joyce ¶ 27. The plaintiff gave Joyce a second exclusive-right-to-sell agreement dated March 9, 2001 and effective March 1, 2001 *for a period ending December 1,* 2001. Joyce SMF ¶ 28, Plaintiff's SMF Joyce ¶ 28; Meador SMF ¶ 23, Plaintiff's SMF Meador ¶ 23. This agreement listed the property for $1,195,000. Meador SMF

---

plaintiff's response to paragraph 1 of the Meador statement of material facts.

**6.** While this paragraph of the plaintiff's statement of material facts begins with the word "disputed," no citation to the record in support of this response is given. The response goes on to state "Plaintiff responds further that" and states additional facts, none of which contradict the relevant assertion in the Joyce statement of material facts. Pursuant to Local Rule 56(e), therefore, the assertion in the Joyce statement of material facts is deemed admitted to the extent supported by a record citation. This situation is also true of the following entries in the plaintiff's statement of material facts and will not be repeated when one of the corresponding moving parties' statements of material facts is cited herein: Joyce ¶¶ 16–17, 23, 28, 42–43, 55, 58; Meador 46.

¶ 24; Plaintiff's SMF Meador ¶ 24. Toward the end of March 2001 Robert Meador made an offer through Moore to exchange property he owned in Southwest Harbor for the plaintiff's property. *Id.* ¶ 25. The plaintiff rejected this offer. *Id.* ¶ 27. Robert Meador looked at the plaintiff's property for the second time on May 18, 2001. Joyce SMF ¶ 36, Plaintiff's SMF Joyce ¶ 36.

After the plaintiff rejected Robert Meador's offer to swap properties, Meador offered to purchase the plaintiff's property for $600,000. Meador SMF ¶ 28, Plaintiff's SMF Meador ¶ 28. After this offer was rejected, Meador offered $800,000. *Id.* ¶ 29. The plaintiff advised Joyce to tell Meador that he would not take any less than $1.1 million for the property. *Id.* ¶ 30. The plaintiff arrived at this figure by computing the approximate cost of living index for owning the property for ten years, after deduction for the expenses of the commissions, taxes, capital gain and other expenses; he did not consult with anyone else in performing this calculation. Joyce SMF ¶ 44, Plaintiff's SMF Joyce ¶ 44.

On April 27, 2001 Robert Meador executed a purchase and sale agreement, to be effective May 2, 2001, by which he offered to purchase the property for $1.1 million. Meador SMF ¶ 31, Plaintiff's SMF Meador ¶ 31. On May 2, 2001 the plaintiff executed the purchase and sale agreement. *Id.* ¶ 32. The Meadors engaged Downeast Home Inspections and inspector Bill Barter to inspect the property pursuant to the terms of the purchase and sale agreement. *Id.* ¶ 34. Barter conducted an inspection of the property on May 10, 2001 during which he conducted a radon test. *Id.* ¶ 35; Joyce SMF ¶ 55, Plaintiff's SMF Joyce ¶ 55. The results of the radon test indicated an abnormally high presence of radon. Meador SMF ¶ 35, Plaintiff's SMF Meador ¶ 35. On May 16,

2001 William Sargent conducted an appraisal of the property at the direction of Bank of America, Meador's lender, after which Sargent valued the property at $1.2 million. *Id.* ¶¶ 37–38.

About a week before closing the plaintiff called Joyce and told her to raise the price of the property to $2.2 million. Joyce SMF ¶ 61, Plaintiff's SMF Joyce ¶ 61. The plaintiff based this price on the opinion of a friend. *Id.* ¶ 62. At this time he asked Joyce for information on comparable sales. *Id.* ¶ 63. Joyce began putting together some information but did not finish before the closing. *Id.* On June 15, 2001 the closing took place and the property was transferred to the Meadors. Meador SMF ¶ 41, Plaintiff's SMF Meador ¶ 41. On that day the Meadors transferred the property by mortgage deed to the Bank of America. *Id.* ¶ 42.

Mr. Desert Properties was paid a commission of $33,000. Joyce SMF ¶ 72, Plaintiff's SMF Joyce ¶ 72. Neither Robert Meador nor Kathleen Meador ever authorized Sharon Joyce to act on their behalf for any reason. Meador SMF ¶ 47, Plaintiff's SMF ¶ 47.

### C. The Joyce Defendants

The first amended complaint asserts claims of fraud (Count I), conspiracy to commit fraud (Count II), unjust enrichment (Count IV), breach of statutory duty (Count V) and negligence (Count VII) against the Joyce defendants, who seek summary judgment on all claims. In his opposition, the plaintiff states that he "does not continue to press his claim for conspiracy against Joyce (Count II)," Plaintiff's Summary Judgment Opposition at 2 n. 1, and accordingly the Joyce defendants are entitled to summary judgment on Count II.

*1. Fraud.* Under Maine law, a person is liable for fraud if she

(1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me.1995). In order to withstand a motion for summary judgment on a fraud claim, a plaintiff "must produce evidence that demonstrates that the existence of each element· of fraud is highly probable rather than merely likely." *Barnes*, 658 A.2d at 1089 (internal quotation marks and citation omitted).

The amended complaint alleges that Joyce told the plaintiff, before he entered into the first listing agreement, that the area in which the subject property was located was "dead" in terms of sales and that waterfront property was not selling well and repeated these assertions after the plaintiff entered into the second listing agreement, First Amended Complaint ¶¶ 13, 25; that Joyce told him at the end of April 2001, shortly before he signed the purchase and sale agreement, that she had determined that there had been no sales in the area in the past twelve months, *id.* ¶ 28; and that Joyce told him after the purchase and sale agreement had been signed that in light of the results of radon tests done on the property the plaintiff would find it difficult to get anyone other

than the Meadors to purchase the property,. *id.* ¶ 35. The plaintiff alleges that these representations were false and provide the basis for his recovery against Joyce for fraud. *Id.* ¶¶ 46–48, 50, 56.

The Joyce defendants contend that the plaintiff has presented no evidence that these representations were false, that Joyce knew the representations were false or acted in reckless disregard of whether they were true or false or that he suffered any damage as a result. Defendants Sharon L. Joyce and Mt. Desert Properties, Inc.'s Memorandum of Law in Support of Motion for Summary Judgment ("Joyce Summary Judgment Motion"), attached to Defendants Sharon L. Joyce and Mt. Desert Properties, Inc.'s Motion for Summary Judgment ·(Docket No. 48), at 3–5.[7] The plaintiff responds that he has submitted evidence that the representations were false, that Joyce knew them· to be false and that he need not prove any damage because he is merely seeking to rescind a contract by proving fraudulent inducement. Plaintiff's Summary Judgment Opposition at 4, 16–20.

The plaintiff has provided evidence that the first representation on which he relies may have been false and that Joyce knew or should have known it to be false. His statement of material facts cites Joyce's deposition testimony that the market "was a very busy, active market" when the first listing agreement was signed and that she considered the market to be "excellent" at

---

7. The Joyce defendants also argue that "[w]ithout expert testimony, Plaintiff will be unable to prove that any statements regarding the real estate market were false." Joyce Summary Judgment Motion at 4. This argument relies on Joyce's motion to strike the plaintiff's expert designations, which I have denied, and accordingly will not be considered. In addition, the Joyce defendants contend for the first time in their reply memorandum that the plaintiff has failed to provide evidence that the alleged misrepresentations

were material, that the misrepresentations were made for the purpose of inducing the plaintiff to act or that the plaintiff justifiably relied on the misrepresentations. Defendants Sharon L. Joyce and Mt. Desert Properties, Inc.'s Reply Brief to Plaintiff's Consolidated Opposition to Motions for Summary Judgment ("Joyce Reply") (Docket No. 62) at 2–3. Arguments raised for the first time in a reply brief will not be considered by the court. *In re One Bancorp Sec. Litig.*, 134 F.R.D. 4, 10 n. 5 (D.Me.1991).

the time Meador made his first offer on the property, Plaintiff's SMF ¶ 10 & Deposition of Sharon L. Joyce ("Joyce Dep.") (included in Deposition Transcripts filed with Plaintiff's SMF) at 43–44, 118–22.

With respect to the second representation, the plaintiff's statement of material facts refers to his affidavit which states that Joyce told him just before he signed the purchase and sale agreement that there had been no waterfront sales and Joyce's testimony about a sale of property near the subject property that took place in late March 2001. Plaintiff's SMF ¶¶ 37, 47; Joyce Dep. at 48; Declaration of Roger Diemmer White (Docket No. 3) ¶ 21. However, the plaintiff offers no evidence that Joyce knew or should have known that her statement to him in April 2001 that there had been no waterfront sales in the area in the past year was false. Accordingly, he cannot rely on that alleged misrepresentation.

As to the third representation, the plaintiff has submitted evidence that, after the results of the radon test were presented, Joyce stated that in her opinion the property would be worthless if the plaintiff did not go through with the sale to the Meadors, Plaintiff's SMF ¶ 58, Deposition of Roger Diemmer White (included in Deposition Transcripts filed with Plaintiff's SMF) at 126–27, and that Joyce in fact believed that the high radon test could have been remedied fairly easily with a mitigation system, Plaintiff's SMF ¶ 58, Joyce Dep. at 167–68.

█ It is therefore necessary to proceed to the Joyce defendants' third argument. Maine law provides that "[p]roof of damage from fraud is not necessarily to justify rescission" of a contract when fraud in the inducement is the basis of a claim for relief. *Estate of Whitlock*, 615 A.2d 1173, 1176 (Me.1992). The plaintiff describes his claim against Joyce as follows:

Plaintiff claims that he was induced to sell his Property when he would not otherwise have done so, and that he was induced to sell for a price which, had he not been misled about certain material facts, he would not have accepted. Whether he would have obtained a higher price for his Property, had he not agreed to sell it to Meador, is irrelevant to his claim. All he needs to be able to prove at trial is that Joyce induced Plaintiff to sell his Property to Meador in reliance on her misrepresentations that she made knowingly or with reckless disregard to their falsity. *See Estate of Whitlock*, 615 A.2d at 1176. A reasonable trier of fact, accepting the disputed facts in the light most favorable to Plaintiff, could agree that the evidence clearly and convincingly shows these elements of fraud.

Plaintiff's Summary Judgment Opposition at 19–20. The problem for the plaintiff with the third alleged misrepresentation, concerning the results of the radon test, is that the misrepresentation is alleged to have been made after the plaintiff agreed to sell the property to Meador. Therefore, it could not possibly have induced the plaintiff to enter into that agreement. *See Whitlock*, 615 A.2d at 1176 (plaintiffs must prove that the misrepresentation "induced them to sign the Agreement").

Both the first and the third alleged misrepresentations are insufficient in another basic sense. Joyce, against whom Count I is asserted, was not a party to the purchase and sale agreement. The plaintiff makes clear in his opposition that the remedy he now seeks is rescission of the sale of the property. The Joyce defendants cannot provide that relief. Since he does not seek damages from the Joyce defendants for the alleged fraud, he has no basis for a claim against them based on fraud under Maine law. The Joyce defendants

are entitled to summary judgment on Count I.

*2. Unjust Enrichment.* Count IV of the amended complaint alleges that the Joyce defendants have unjustly retained the $33,000 commission paid in connection with the sale of the property. First Amended Complaint ¶¶ 69–73. The Joyce defendants contend that a claim for unjust enrichment may be maintained only when there is no contractual relationship between the parties, which is not the case here. Joyce Summary Judgment Motion at 9. They also argue that the plaintiff has not presented evidence that their retention of the commission would be unjust. *Id.* at 9–10. The plaintiff rejoins that Joyce's "wrongful conduct . . . could not be addressed by a claim for breach of contract, and indeed, has nothing to do with her obligations under the Second Listing Agreement." Plaintiff's Summary Judgment Opposition at 15. He adds in conclusory fashion, without citation to authority, that Joyce's alleged actions "constitute a serious failure to honor her equitable obligations" to him, making recovery on this theory possible. *Id.*

■ Under Maine law, "[t]o establish a claim for unjust enrichment, a party must prove (1) that it conferred a benefit on the other party; (2) that the other party had appreciation or knowledge of the benefit; and (3) that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Howard & Bowie, P.A. v. Collins,* 759 A.2d 707, 710 (Me.2000) (internal quotation marks and citation omitted). Recovery on this theory is available "when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Forrest Assocs. v. Passamaquoddy Tribe,* 760 A.2d 1041, 1046 (Me.

2000) (internal quotation marks and citation omitted). Here, the amended complaint and the parties' statements of material facts make clear that the plaintiff was a party to a written contract with one or both of the Joyce defendants. First Amended Complaint ¶¶ 15, 23; Joyce SMF ¶ 28, Plaintiff's SMF Joyce ¶ 28; Meador SMF ¶ 11, Plaintiff's SMF Meador ¶ 11. The plaintiff does not explain how he is unable to seek recovery of the commission paid in accordance with the terms of the second listing agreement on a theory of breach of the terms of that agreement. In the absence of any developed argument on this point, the theory is waived. The Joyce defendants are entitled to summary judgment on Count IV.

*3. Breach of statutory duty.* Count V of the amended complaint alleges that the Joyce defendants breached the duties imposed on them by 32 M.R.S.A. § 13273(1). First Amended Complaint ¶ 75. That statute provides:

**1. Duty to seller.** A real estate brokerage agency engaged by a seller:

**A.** Shall perform the terms of the brokerage agreement made with the seller;

**B.** Shall promote the interests of the seller by exercising agency duties are set forth in section 13272 including:

(1) Seeking a sale at the price and terms stated in the brokerage agreement or at a price and terms acceptable to the seller except that the licensee is not obligated to seek additional offers to purchase the property while the property is subject to a contract of sale unless the brokerage agreement so provides;

(2) Presenting in a timely manner all offers to and from the seller, even when the property is subject to a contract of sale;

(3) Disclosing to the seller material facts of which the licensee has actual knowledge or if acting in a reasonable manner should have known concerning the transaction, except as directed in section 13280;

(4) Advising the seller to obtain expert advice on material matters that are beyond the expertise of the licensee; and

(5) Accounting in a timely manner for all money and property received in which the seller has or may have an interest;

C. Shall exercise reasonable skill and care;

D. Shall comply with all requirements of the laws governing real estate commission brokerage licenses and any rules adopted by the commission;

E. Shall comply with any applicable federal, state or local laws, rules, regulations or ordinances related to real estate brokerage including fair housing and civil rights laws or regulations;

F. Has an obligation to preserve confidential information provided by the seller during the course of the relationship that might have a negative impact on the seller's real estate activity unless:

(1) The seller to whom the information pertains grants consent to disclose the information;

(2) Disclosure of the information is required by law;

(3) The information is made public or becomes public by the words or conduct of the seller to whom the information pertains or from a source other than the licensee; or

(4) Disclosure is necessary to defend the licensee against an accusation of wrongful conduct in a judicial proceeding before the commission or before a professional committee; and

G. Must be able to promote alternative properties not owned by the seller to prospective buyers as well as list competing properties for sale without breaching any duty to the client.

32 M.R.S.A. § 13273(1).

While acknowledging that the Maine Law Court has not addressed the question, the Joyce defendants contend that expert testimony is required in order to establish a breach of any of these duties and that the plaintiff has failed to designate an expert witness to testify that either of them breached the statutory standard of care. Joyce Summary Judgment Motion at 7–8. The plaintiff responds that expert testimony is not necessary because the duties are clearly spelled out in the statute and the alleged misconduct is "simple." Plaintiff's Summary Judgment Opposition at 21–22. In the alternative, he states that he has designated Whitehouse as an expert to testify on this issue. *Id.* at 23.[8]

■ The plaintiff's designation of Whitehouse states, with respect to his expected testimony, that he

will testify regarding the obligations of both buyer's and seller's real estate agents to a seller of real estate, including but not limited to their obligations to provide a careful and thorough analysis of the market, to disclose relevant facts, including sales of properties in the area, to be truthful in their representations about the consequences of issues and factors that might affect the value of real estate, and the legal provisions governing their activities.

8. The plaintiff also refers to unspecified testimony of Janet Moore as evidence of the applicable standard of care. Plaintiff's Summary Judgment Opposition at 23 n. 9. Even if a citation to the record had been given to identify this testimony, the plaintiff, having failed to designate this former party to this action as an expert witness, would not be able to call her as an expert witness at trial.

Plaintiff's Expert Witness Designation [of Ernest A. Whitehouse]. This designation cannot reasonably be read to inform the defendants that Whitehouse will testify that they breached the duties at issue, but it does provide sufficient notice that he will testify to the standard of care. As the Law Court has noted, "establishing the standard of care . . . ordinarily requires expert testimony." *Searles v. Trustees of St. Joseph's College*, 695 A.2d 1206, 1210 (Me.1997). Expert testimony is not necessary where the negligence and its harmful results are sufficiently obvious to lie within common knowledge. *Id.* Here, given the nature of the plaintiff's allegations against the Joyce defendants, once the standard of care has been presented to a reasonable factfinder, the application of common knowledge to the developed facts at trial would allow the factfinder to conclude whether the conduct at issue violated that standard without further expert testimony. Accordingly, if expert testimony is necessary on Count V, the plaintiff has presented sufficient evidence to allow this claim to proceed. The Joyce defendants are not entitled to summary judgment on Count V on the showing made.

*4. Negligence.* Count VII of the amended complaint alleges negligence against the Joyce defendants, specifically by breaching 32 M.R.S.A. § 13273(1). First Amended Complaint ¶¶ 82–87. The Joyce defendants contend that this claim is duplicative of Count V and note that 32 M.R.S.A. § 13276 provides that the statutory provisions supercede common law. Joyce Summary Judgment Motion at 6–7 & n. 2. The plaintiff responds merely by stating that "[t]he statutory duty does not completely supersede the common law duty." Plaintiff's Summary Judgment Opposition at 23 n. 8.

■ Section 13276 of Title 32 provides, in relevant part:

The provisions of this subchapter supersede the duties and responsibilities of the parties under the common law, including fiduciary responsibilities of an agent to a client or principal, except with regard to vicarious liability and except as set forth in this subchapter. This section does not preclude the use of common law, when it is not inconsistent with this subchapter, in defining and interpreting the duties listed in section 13272.

Section 13273, which provides the basis for Count V, is part of the same subchapter as section 13276. By specifying that the common law may be used in interpreting a specific section of the subchapter, section 13276 does not establish that a separate common-law cause of action remains available for the breach of the duties listed there or anywhere else in the subchapter. The plaintiff does not identify any other statutory language in the subchapter that would preserve a common-law cause of action. Section 13276 clearly precludes a common-law cause of action for negligence based on violation of the duties set forth in section 13273. The Joyce defendants are entitled to summary judgment on Count VII.

*5. Punitive damages.* The amended complaint seeks punitive damages against the Joyce defendants. First Amended Complaint at 21. The Joyce defendants contend that the plaintiff has offered no evidence that would allow a factfinder to conclude that their alleged actions were undertaken with actual or implied malice. Joyce Motion for Summary Judgment at 10–11. The plaintiff responds that the evidence of fraud is sufficient to allow him to proceed with his claim for punitive damages. Plaintiff's Summary Judgment Opposition at 24–25. If the plaintiff's demand for punitive damages against the Joyce defendants is indeed limited to his fraud claim, the court's adoption of my

recommendation that the Joyce defendants' motion for summary judgment on that claim be granted would mean that the Joyce defendants are entitled to summary judgment on this claim as well.

If the plaintiff means to seek punitive damages in connection with his claim against the Joyce defendants in Count V, the only substantive count alleged against these defendants with respect to which I have recommended that the motion for summary judgment be denied, the evidence presented by the plaintiff does not rise to the level necessary to sustain such a claim. Assuming *arguendo* that punitive damages would be available on this statutory claim, Maine law provides that

> [a] plaintiff seeking punitive damages must show by clear and convincing evidence that the defendants' conduct was motivated by actual ill will, or that the conduct was so outrageous that malice is implied.

*Grover v. Minette–Mills, Inc.*, 638 A.2d 712, 717–18 (Me.1994). The plaintiff contends that Joyce's conduct was outrageous, Plaintiff's Summary Judgment Opposition at 25, apparently conceding that his proffered evidence does not establish actual ill will. I agree with the latter proposition. In addition, none of Joyce's alleged actions or failures to act included in the plaintiff's statement of material facts is sufficient to allow a reasonable factfinder to conclude that malice may be implied under this test. The Joyce defendants are entitled to summary judgment on the plaintiff's claim for punitive damages.

### D. The Meador Defendants

The Meador defendants seek dismissal of, or summary judgment on, Count III, the only count of the amended complaint which the plaintiff continues to assert against them. Defendants Robert D. Meador and Mary Kathleen Meador's Motion for Summary Judgment, etc. ("Meador Summary Judgment Motion") (Docket No.

50) at 3, 12–14, 19–20. That count alleges unjust enrichment and seeks rescission of the sale of the property as a remedy. First Amended Complaint ¶¶ 64–68. The Meador defendants contend that dismissal is appropriate because the plaintiff has failed to join a necessary party, the bank which financed their purchase of the property. They assert that they are entitled to summary judgment because there is an underlying contract and because their retention of the property is not inequitable under the circumstances. The plaintiff responds that joinder of the bank is not necessary and that no contractual remedy is available, making unjust enrichment the appropriate legal theory on which to proceed. Plaintiff's Summary Judgment Opposition at 2–15, 25–26.

*1. Necessary Party.* Fed.R Civ.P. 19(a) provides, in relevant part: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a part in the action if . . . in the person's absence complete relief cannot be accorded among those already parties." The Meador defendants contend that, because they transferred the property by mortgage deed to the Bank of America pursuant to a mortgage on the day of closing, Meador SMF ¶ 42, rescission of the sale "is an impossible remedy simply because Bank of America is the Title [sic] owner to the property, and is not a party to the action," Meador Summary Judgment Motion at 20. It is true that title to the property, under these circumstances, remains with the bank until the mortgage is paid off, *Brickyard Assocs. v. Auburn Venture Partners*, 626 A.2d 930, 932 n. 4 (Me.1993), but that does not end the matter for purposes of Rule 19(a).

Contrary to the Meadors' argument, Defendants Robert D. Meador and

Mary Kathleen Meador's Reply To Plaintiff's Consolidated Opposition, etc. (Docket No. 66) at 4, the fact that this court cannot order the bank to take any action with respect to the property unless the bank is a party to this action is not dispositive. The Meadors have not provided evidence that the mortgage is not assumable, in which case they could merely assign it to the plaintiff. Even if the mortgage were not assumable, the Meadors have not provided evidence that it could not be discharged at any time by payment of the outstanding balance, an action which the court could order the Meadors to undertake in order to effect rescission of the sale. Under these circumstances, the bank cannot be said to be a necessary party to this action. The Meador defendants are not entitled to dismissal of Count III on this basis.

■ *2. Summary Judgment.* Relying on a long line of Maine case law, the Meador defendants contend that they are entitled to summary judgment on the plaintiff's unjust enrichment claim because a written contract between the parties governs the very transaction which the plaintiff seeks to rescind. The plaintiff responds that "legal remedies may be inadequate because of the unique nature of real property" and that "rescission of the sale is the only way to make Plaintiff whole." Plaintiff's Summary Judgment Opposition at 14. That may be the case, but unjust enrichment is not the only legal theory available under which the sale may be rescinded. Maine law clearly provides that "the existence of a contract precludes

recovery on a theory of unjust enrichment because unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship." *June Roberts Agency, Inc. v. Venture Props., Inc.,* 676 A.2d 46, 49 n. 1 (Me. 1996).[9] If, as the plaintiff contends, Plaintiff's Summary Judgment Opposition at 15, the purchase and sale agreement itself provides no remedy for the wrongful conduct by the Meador defendants that he alleges, an action for breach of that contract is also not the only avenue open to recovery by the plaintiff. *Cf. In re Wage Payment Litig.,* 759 A.2d 217, 224 (Me. 2000) (upholding dismissal of unjust enrichment claim where contract existed between parties even though no breach of contract claim asserted). As he initially sought to do, the plaintiff may seek relief by asking a court to void the purchase and sale agreement on the ground of fraud. The plaintiff has voluntarily chosen to discontinue his pursuit of relief on that theory. Contrary to the plaintiff's suggestion, Plaintiff's Summary Judgment Opposition at 15, it is not the fact that the deposit on a sale of real property was not refundable by terms of the purchase and sale agreement between the parties that made a claim for unjust enrichment unavailable in *Lynch v. Ouellette,* 670 A.2d 948, 950 (Me. 1996), but merely the fact that such a contract existed.

The Meador defendants are entitled to summary judgment on Count III.

### V. Conclusion

For the foregoing reasons, (i) the defendants' motions to strike are **DENIED**; (ii)

---

**9.** *George C. Hall & Sons, Inc. v. Taylor,* 628 A.2d 1037, 1039 (Me.1993), cited by the plaintiff, may indeed stand for the proposition that "unjust enrichment against innocent party who benefits from bargain may be appropriate where restitution otherwise unavailable," Plaintiff's Summary Judgment Opposition at 14, but the recovery discussed in that case is that of a third party who is not a party to the

underlying contract, which is not the factual situation present here. In this case, the plaintiff seeks to recover under this theory against the other parties to the underlying contract. Nor does the fact that the plaintiff in this case has chosen not to pursue another theory under which restitution might be available make unjust enrichment an appropriate vehicle for relief.

I recommend that the plaintiff's motion for judgment on the pleadings as to Count II of the counterclaim filed by defendants Robert D. Meador and Mary Kathleen Meador be **GRANTED**; (iii) I recommend that the motion of defendants Sharon L. Joyce and Mt. Desert Properties, Inc. be **GRANTED** as to Counts I, II, IV and VII of the First Amended Complaint and any claim for punitive damages and otherwise **DENIED**; and (iv) I recommend that the motion of Robert D. Meador and Mary Kathleen Meador for summary judgment be **GRANTED** as to all counts asserted against them. Remaining for trial if the court adopts my recommendations will be Count V of the first amended complaint against defendants Sharon L. Joyce and Mt. Desert Properties, Inc. and Count I of the counterclaim asserted by the Meador defendants.

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*